IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

JESSE THOMAS PRYOR,

        Petitioner,

   vs.

JIM SALMONSEN, ATTORNEY
GENERAL OF THE STATE OF
MONTANA,

       Respondents.

CV 24-48-H-DWM

ORDER

This matter comes before the Court on a petition filed by pro se state prisoner Jesse Thomas Pryor ("Pryor") seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Pryor subsequently was granted leave to proceed in forma pauperis. (Doc. 5.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.* If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."

1

*Id.* As explained below, Nolan's petition will be denied and dismissed.

## I.    Background

The Montana Supreme Court explained Pryor's challenge to the state Parole

Board denying him release on parole and his subsequent due process challenge as

follows:

> Jesse T. Pryor has filed a Petition for Writ of Habeas Corpus, indicating that the Board of Pardons and Parole (Board) should have granted him a parole and that the Board violated his Due Process rights in denying him a parole. He includes several attachments.
>
> Pryor explains that he "had no sanctions for any violations in 2021," and that the Montana Incentives and Interventions Guide (MIIG) should have been applied to him, pursuant to § 46-23-1028, MCA. He provides that on July 18, 2021, he was arrested on a July 8 warrant for not reporting. He states that he was charged with a new misdemeanor that was later dismissed and that the Report of Violation lists new felony charges from Lewis and Clark County. He further states that he was never charged with those felonies. He points to his classification report from prison which lists no detainers, warrants, or notifications. He further explains that he was in a severe car accident and was life-flighted to a hospital in Great Falls. He puts forth that he lost his residence while he was in the hospital and that he tried to make contact with his parole officer. Pryor concludes that his violations were all compliance violations, thereby triggering the application of MIIG. Pryor requests his immediate release from prison.
>
> Pryor includes a copy of a July 1, 2021 Report of Violation, prepared by his parole officer. The Report of Violation provides that Pryor was granted a parole in February 2020 and he began supervision with Billings Probation and Parole. The first listed violation is the non-compliance violation where Pryor did not comply with laws and conduct. The Report references the severe car accident on May 14, 2021, and that after a search of the wrecked vehicle, twenty-six grams of methamphetamine were found along with syringes and oxycodone pills. The Report also lists a second count where his parole officer contacted the hospital in Great Falls on May 17, 2021, and

spoke to Pryor, telling him to report to Billings Probation and Parole immediately upon his release. The parole officer further provides that she called the hospital on June 8, 2021, and learned that Pryor had discharged on May 19, 2021. The parole officer concluded in this Report that Pryor was an absconder who "has deliberately made his[ ] whereabouts unknown ..." and that any attempt to make contact was unsuccessful.

*Pryor v. Salmonsen*, No. OP 22-0293, 2022 WL 2231061, at *1 (Mont. June 21, 2022).[1]

In denying Pryor relief, the Court first held that the MIIG does not apply when a parolee has new criminal offenses or absconds from supervision. *Id.*, *citing* Mont. Code Ann. §§ 46-23-1001(3)(a), (d) and 46-23-1024(4)(c)(4). The Court next noted that the Parole Board possesses broad statutory authority and is empowered to consider dismissed criminal conduct. *Id.*, *citing McDermott v. McDonald*, 2001 MT 89, ¶ 21, 305 Mont. 166, 24 P. 3d 200. Thus, even though Pryor's misdemeanor was dismissed and his felony charges in Lewis and Clark County were not adjudicated, the Board acted within its discretion in considering those charges when deciding to revoke Pryor's parole. *Id.*

The Court finally looked to the United States Supreme Court for guidance in considering the process Pryor was due during his parole hearing, noting that due process is satisfied "when the prisoner seeking parole is, at a minimum, provided with an opportunity to be heard and a written statement explaining why he was

---

[1] Pryor attached a copy of this decision to his petition. *See*, (Doc. 1-1 at 25-27.)

denied parole. *Id.* at *2, (additional citations omitted).  The Board, during its regular session, revoked Pryor's parole and provided the basis for in its April 5, 2022 disposition: "Laws and conduct (charged in Billings Municipal Court, inmate possibly pending new felony charges), reporting and residence." *Id.*  The Court concluded that Pryor's due process rights were not violated and that he had not demonstrated illegal incarceration.  His habeas petition was denied and dismissed. *Id.*

## II.    Pryor's Allegations

Pryor first alleges that his due process rights were violated by "judicial fabrication" and by the Montana Supreme Court "legislating from the bench." (Doc. 1 at 4.)  In support of this contention Pryor cites to the "*Chevron* Doctrine" and *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (June 28, 2024). (*Id.*) Pryor next alleges that the Montana Supreme Court erred when it found that the Parole Board could consider dismissed criminal counts or conduct in denying him parole. (*Id.* at 5.)  Pryor asserts the only time a board may consider such conduct is "the first time" an inmate appears before the Board. (*Id.*)  Pryor relies upon *Robinson v. Hadd*, 723 F. 2d 59 (10th Cir. 1983), in support of this claim.  Pryor asks the Court to release him to time served and award him $1,500/day for each day of his illegal incarceration.  (Doc. 1 at 8.)

//

III.   **Analysis**

First, Pryor is advised that monetary damages are not available to a
petitioner in a habeas action. *McCarthy v. Bronson*, 500 U.S. 136
(1991)(recognizing two primary categories of suits brought by prisoners-
applications for habeas corpus relief pursuant to 28 U.S.C. §§ 2254 and 2255 and
actions for monetary or injunctive relief under 42 U.S.C. § 1983).  Thus, Pryor is
not entitled to the relief requested.

Next, under the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), a federal court may not grant a habeas corpus application "with
respect to any claim that was adjudicated on the merits in State court proceedings,"
28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved
an unreasonable application of, clearly established Federal law, as determined by
the Supreme Court of the United States," § 2254(d)(1), or "was based on an
unreasonable determination of the facts in light of the evidence presented in the
State court proceeding," § 2254(d)(2). See, *Knowles v. Mirzayance,* 556 U.S. 111,
114 (2009).  As explained below, the Montana Supreme Court reasonably denied
Pryor's due process claims.  Further, his challenge to the application of state law is
not cognizable in federal habeas.

**Due Process Violation**

The Due Process Clause of the Fourteenth Amendment to the United States

Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1.  Thus, to state a due process violation an individual must establish the existence of a constitutionally recognized liberty interest that is protected by the Due Process Clause and must demonstrate the procedures afforded the individual for the protection of the liberty interest were constitutionally deficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  "Protected liberty interests may arise from two sources- the Due Process Clause itself and the laws of the States."  *Id.*  (quotation and citation omitted).  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (stating that a protected liberty interest could "arise from the Constitution itself, [...or] from an expectation or interest created by state laws or policies.").

It is well established that there exists no substantive federal right to release on parole, and "the only federal right at issue" in the context of habeas claims regarding parole hearings is a procedural right.  *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011)(per curium).  Likewise, in Montana there is no state-created liberty interest in parole.  *Worden v. Mont. Bd. of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998)(holding that when the Legislature amended the statute in 1989, it eliminated any liberty interest in parole); *see also* Mont. Code Ann. § 46-23-208(1) (providing the parole board *may* release a prisoner on parole when certain

criteria are met). Thus, there is neither a constitutional right nor a protected liberty interest at issue in Pryor's case.

In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the United States Supreme Court held that, although parolees enjoy only "conditional liberty," termination of that liberty constitutes a "grievous loss" requiring "some orderly process." *Id.* at 495. However, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480. The Court determined the process that is due to an individual facing parole revocation includes "two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–782 (1973) (*citing Morrissey,* 408 U.S. 471). But *Morrissey* also explains that the requirements of due process are flexible and "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey,* 408 U.S. at 481. Additionally, while *Morrissey* and *Gagnon* require a probable cause determination before revocation, the individual states may implement different procedures and still satisfy due process. See generally, *id.* at 481, 485, 487; *Gagnon,* 411 U.S. at 782.

Pryor seems to suggest that he had to be actually convicted of new offenses in order for his parole to be revoked. Because some of the new charges against Pryor were dismissed, he seems to suggest his parole was unlawfully revoked and he was denied the procedural process to which he was due when the Montana Supreme Court "legislated from the bench" in affirming his parole revocation.

Although he provides no analysis, Pryor cites to *Loper Bright*, 144 S. Ct. 2244, in support of his due process claim. In *Loper Bright* the Court expanded the authority of courts to review ambiguity in statutory directives to agencies. *See generally, Loper Bright*, 144 S. Ct. at 2254. The Supreme Court altered "*Chevron* deference," which had required courts to defer to an agency's reasonable interpretation of an ambiguous statutes. 144 S. Ct. 2244. Moreover, in *Loper Bright*, the Court was concerned with agency interpretations which were challenged under the Administrative Procedure Act ("APA"). *Id.* Pryor has provided no authority that would suggest *Loper Bright* is applicable to a state body, such as the Montana Parole Board. Moreover, there is no ambiguous statute at issue nor is there a challenge advanced under the APA. At most, Pryor has expressed a personal disagreement with Montana law, but fails to identify an issue of federal constitutional import. His reliance upon and argument relative to *Loper Bright* is meritless.

8

Further, Pryor seems to suggest that the Montana Supreme Court misinterpreted state law in finding that the Parole Board had the authority to consider dismissed criminal conduct in revoking his parole.  In support of this position, Pryor relies on a 1983 case out of the Tenth Circuit, *Robinson v. Hadden*, 723 F. 2d 59.  This case not only lacks precedential value in Court, but it does also not stand for the premise which Pryor advances.

In *Robinson*, a federal petitioner filed a writ challenging the then-existing Parole Commission's action and argued that the Commission erred in considering his presentence report and abused its discretion considering evidence related to counts that had been dismissed pursuant to a plea agreement.  *Id.* at 60.  There, the Circuit affirmed Robinson's sentence and specifically found that the Parole Commission "did not abuse its discretion in considering evidence concerning the counts dismissed pursuant to the plea bargain agreement, information which was contained in the presentence report, in characterizing Robinson's offense severity."  *Id.* at 62.  Because no specific assurances were made by the prosecutor to Robinson, or contained within the plea agreement, that dismissed counts could not be considered at a later date, the Commission was free to consider such evidence.  *Id.* at 63.  Moreover, Pryor's situation is different from Robinson's.  *Robinson* was concerned with conduct underlying the original offense that was dismissed pursuant to a plea agreement made by the parties and the Commission's

9

consideration of such information, whereas Pryor's claim involves new criminal conduct committed while Pryor was released on parole.

The decision to revoke Pryor's parole was not solely based upon the new criminal charges that were subsequently dismissed. As set forth above, it was not solely that the Parole Board believed Pryor had violated the laws and conduct provision of his parole by being charged in Billings Municipal Court and potentially being cited with new felony charges in Lewis and Clark County, he had also violated the reporting and residence requirements of his supervision.

Under *Morrissey*, the State of Montana is free to implement its own procedures and those procedures can still satisfy due process. *Morrissey*, 408 U.S. at 481. Pryor's due process rights under *Morrissey* were not violated. Or, put another way, Pryor has not demonstrated the Montana Supreme Court's decision denying his due process claim was contrary to or involved an unreasonable application of *Morrisey*. Accordingly, this Court must afford deference under 28 U.S.C. § 2254(d). The due process claim will be denied.

**State Law Violation**

Pryor also suggests the Montana Supreme Court violated its own case law, when it denied his state habeas petition. A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding upon the state courts and is not available for alleged errors in the interpretation and

10

application of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989). Because state courts are the ultimate expositors of state law, the federal courts are bound by their constructions and limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States.  See, *Bonin v. Calderon*, 59 F. 3d 815, 841 (9ᵗʰ Cir. 1995).

To the extent that Pryor asks this Court to interpret and apply state law to correct a perceived wrong, this is not a cognizable ground for relief in a federal habeas corpus proceeding.  *Mendez v. Small*, 298 F. 3d 1154, 1158 (9ᵗʰ Cir. 2002)("[a] state court has the last word on interpretation of state law"); *Estelle v. McGuire,* 502 U.S. 62, 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Bonin v. Calderon*, 59 F. 3d 815, 841 (9ᵗʰ Cir. 1995) (violation of a "state law right does not warrant habeas corpus relief"); *Lewis v. Jeffers*, 497 U.S. 764, 789 (1990) ("Federal habeas corpus relief does not lie for errors of state law"); *Peltier v. Wright*, 15 F. 3d 860, 861-2 (9ᵗʰ Cir. 1994) (generally federal habeas corpus relief unavailable for errors of state law).  While Pryor may believe the Montana Supreme Court incorrectly applied state law to his case, such belief does not create a viable federal constitutional claim.  The state's highest court is the

final authority on the law of that state. *Sandstrom v. Montana,* 442 U.S. 510, 516-17 (1979).  This claim is not cognizable and will also be denied.

### IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules governing § 2254 Proceedings.  A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pryor has failed to make a substantial showing of a denial of a federal constitutional right.  Pryor's Due Process claim does not survive deferential review under AEDPA.  Pryor's dispute with the application of state law is not cognizable in federal habeas.  Accordingly, jurists would find no basis to encourage further proceedings.  A certificate of appealability is denied.

Based on the foregoing, IT IS ORDERD that:

1.  Pryor's Petition (Doc. 1) is DENIED and DISMISSED.

2.  The Clerk of Court is directed to enter judgment in favor of

Respondents and against Petitioner.

   3.  A certificate of appealability is DENIED.

       DATED this 21st day of October, 2024.

                                    _____
                                    Donald W. Molloy, District Judge
                                    United States District Court